EDLA GAGAN, ADMINISTRATRIX v.
KATHERINE LEARY, ADMINISTRIX, ET AL.

COURT OF COMMON PLEAS    FAIRFIELD COUNTY    FILE No. 46081

Memorandum filed December 10, 1946.

*Louis M. Altman,* of Stamford, for the Plaintiff.

*Harold E. Linsley,* of Stamford, for the Defendants.

BORDON, J.   Although the parties differ in some of the unimportant elements of the case, they are not far apart on the controlling elements.   It is true that Edla Roberg, before she was Mrs. Hugh Gagan, loaned the decedent Hugh various amounts from time to time, and $500 at one time, but really never concerned herself with the purposes of the borrowing nor the use to be made of her money.   It is likewise true that Alice Gagan also loaned or gave Hugh, her brother, moneys from time to time without evidencing much interest in its disposition by him.   Edla appears to have had more intimate knowledge of Hugh's business affairs generally throughout the years, but his sisters seem to have more explicit knowledge regarding the transaction involved in this dispute, and their testimony is accepted by the court as representing the truth in the situation. It is, therefore, found that on October 11, 1937, Hugh Gagan (or Geoghan) acknowledged his aggregate indebtedness to Edla by executing and delivering his note to her for $1200, and that this note remains unpaid.   It is also found that on September 25, 1925, Hugh purchased the real estate in question from Frank B. Gurley for $500 and caused title to be taken in the name of his sister Alice because she advanced the requisite purchase price.   It may also be that he caused title to be taken in her name because of a threatened lawsuit against him and because of his desire to secure her for the amount she advanced to enable him to buy the property.   Title was actually taken on December 1, 1925, and remained in Alice's name up to the time of her death.

It seems to the court that the most important fact controlling the solution of this dispute is undisputed.   From the time of purchase of the property until his death, Hugh exercised complete dominion and control over the property and used it as his own.   Edla believed it was his and his sisters never regarded

ownership in anyone but in Hugh. At various times Alice offered to convey it to him, at times she pleaded with him to take it back, and at times she told him it was burdensome to keep it in her name. His answer always was the same — that he desired it kept in her name as security for her money. Alice never exercised any right which can be construed as an indicia of ownership, never sought to use it as her property and never disputed her brother's use as sole owner. The property was put in her name without any intent to vest in her any beneficial interest, but simply to secure her for the money she paid and to protect her against loss because of a possible suit that was pending. Under the circumstances, therefore, the conclusion is inescapable that the property in question was owned by the decedent Hugh Gagan, subject to an indebtedness to his sister Alice for the amount advanced by her.

Judicial sanction has uniformly been given to the proposition that a deed, absolute on its face, may be regarded as a mortgage where facts disclose the indicia of a mortgage rather than an outright sale. *Spelke* v. *Shaw,* 114 Conn. 272, 281; *Kane* v. *Kane,* 120 Conn. 184, 187; *Calamita* v. *DePonte,* 122 Conn. 20, 26; *Onofrio* v. *Cirusuolo,* 109 Conn. 521, 525.

In this case none of the parties to the original transaction contemplated an absolute sale to Alice. Although she does not appear to have desired or requested security for her loan, Hugh, nevertheless, insisted on giving it to her. This does not change the character of the transaction. *Chiarelli* v. *Pentino,* 100 Conn. 686, 689.

It is the duty of the court to give a transaction its true status as disclosed by the evidence, regardless of the pleadings, and when it is established that a conveyance by an absolute deed is intended as security for a debt, it is to be regarded as a mortgage. *Anderson* v. *Colwell,* 93 Conn. 61, 65; *French* v. *Burns,* 35 Conn. 359, 363; *Williams* v. *Chadwick,* 74 Conn. 252, 255. *Gascoigne* v. *Timmons,* 96 Conn. 212, 216; see also Hartford-Connecticut *Trust Co.* v. *Devine,* 97 Conn. 193; *Morin* v. *Newbury,* 79, Conn. 338, 340; ' *Rosenbluth* v. *DeForest & Hotchkiss Co.,* 85 Conn. 40; *Petello* v. *Teutonia Fire Ins. Co.,* 89 Conn. 175, 178.

The defendant has suggested that if title was put in Alice's name to defeat the rights of a creditor in a possible or pending lawsuit, no reconveyance can be asked because the plaintiff,

though seeking equity, comes into court with unclean hands. *Guest* v. *Guest,* 117 Conn. 289. This claim has merit and would be of prevailing influence if the action had been brought by the deceased himself. Such a defense is not available against an administratrix of an estate. She is not making the turpitude of the deceased the foundation of her action; that foundation is that the deceased at his death was the beneficial owner of property the bare legal title to which was in another. The deceased could not have asserted title to it because he could not come into court with clean hands, but the turpitude of the deceased will not be visited upon his heirs and distributees. To hold otherwise would make the principle invoked an instrument of injustice, which should not be done. *Finnegan* v. *LaFontaine,* 122 Conn. 561, 570.

The court is prepared to sustain the allegations of the plaintiff's complaint and enter an order in compliance with the first claim. It is not, however, prepared to find the extent of the indebtedness because it was not part of the defendant's case and is not raised by the pleadings. It appears that $500 was originally advanced, $303.30 paid by her for the sewer lien, and about $35 paid for taxes. The total with interest from dates of respective payments has been computed by the court to amount to $1832.04. If the parties cannot agree on the amount, the court will determine the amount at a future hearing. At any rate, no order to convey title to the real estate will be entered until the amount is ascertained and ordered paid by the plaintiff to the defendant simultaneously with the conveyance.

The issues on the pleadings are found for the plaintiff and judgment may be entered that the plaintiff has legal title to the real estate described in the complaint, subject to an indebtedness of an unascertained amount due the defendant. The plaintiff may also recover her costs.

December 10, 1946. Judgment entered in accordance with the foregoing.