## Balboa Insurance Company *v.*
## Joseph D. Zaleski et al.
### (5461)

Dupont, C. J., Spallone and Bieluch, Js.

Submitted on briefs September 1—decision released November 3, 1987

*Mark S. Rosenblit* filed a brief for the appellant (named defendant).

*Mark E. Blakeman* filed a brief for the appellee (plaintiff).

BIELUCH, J. The named defendant, Joseph D. Zaleski, appeals from the judgment rendered by the trial court in favor of the plaintiff for monetary damages in its suit on a general indemnity agreement executed by the defendants.[1] The sole issue before this court is whether the plaintiff's action was barred by the six year statute of limitations on contract actions contained in General Statutes § 52-576.[2] Determinative of this question is the date of accrual of the plaintiff's cause of action. The trial court held that the cause of action arose when the plaintiff's loss was determined by judgment against it on its performance bond and on its labor and material payment bond which were issued at the defendant's request pursuant to the underlying general indemnity agreement. We find error.

The facts are undisputed. On April 5, 1979, the town of Chester awarded a contract by low bid to the defendant for replacement of the roof on the Chester Elementary School. Among the required conditions was the submission of performance and labor and material payment bonds. To obtain these financial guarantees from the plaintiff, the defendant and Dorothy Zaleski, as individual indemnitors, executed a general indemnity agreement in favor of the plaintiff on May 31, 1979. Thereafter, on June 14, 1979, the defendant, as principal, and the plaintiff, as surety, executed a performance bond and a labor and material payment bond to the town of Chester, as obligee. Upon the furnishing

---

[1] The complaint named as defendants Joseph D. Zaleski doing business as A.W. Campbell Company and Joseph D. Zaleski as an individual. The complaint also named Dorothy Zaleski as a defendant, but the action against her was withdrawn by the plaintiff on March 24, 1986. Inasmuch as the defendant Joseph D. Zaleski doing business as A.W. Campbell Company and individually is legally one and the same individual, we shall refer to him as the defendant.

[2] As relevant here, General Statutes § 52-576 provides: "(a) No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

of these two bonds, the contract for the school roof replacement was executed by the town and the defendant on July 2, 1979.

Daniel Moriarty & Associates, the town's architects and supervising engineers on the roof project, on September 21, 1979, gave the defendant seven days written notice that the town was terminating the roof replacement contract, giving as its reason the defendant's "wrongful abandonment of work and removal of materials and supplies." A copy of this notification was sent to the plaintiff.

On February 25, 1980, Green Enterprises, Inc., a supplier of materials for the roof contract, brought suit in the Superior Court in the judicial district of New London against the defendant and the surety on their labor and material payment bond. Summary judgment was rendered in favor of Green Enterprises, Inc., in that action on October 27, 1981.

The defendant on March 25, 1980, brought an action in the Superior Court in the judicial district of Hartford-New Britain at New Britain against the town of Chester for breach of contract. The town, on April 28, 1980, countered with a suit in the Superior Court in the judicial district of Middlesex against the surety for payment under its performance and labor and material payment bonds. On April 19, 1983, the defendant's case and the town's case were consolidated for trial in the judicial district of Hartford-New Britain at New Britain. After trial of the consolidated cases, the court on July 22, 1983, rendered judgment in *A.W. Campbell Co.* v. *Chester,* for the town. In *Chester* v. *Balboa Ins. Co.,* damages of $5550, plus interest and taxable costs, were awarded to the town on the two surety bonds.

After these judgments were rendered, the plaintiff brought suit on its general indemnity agreement on January 23, 1985, within the period fixed by the stat-

ute of limitations. This action was returned to the Superior Court in the judicial district of Hartford-New Britain at Hartford. Although the defendants were Joseph D. Zaleski, doing business as A.W. Campbell Co., Joseph D. Zaleski, individually, and Dorothy Zaleski; see footnote 1, supra; mesne process had been served only upon Dorothy Zaleski. The plaintiff was unable to locate Joseph D. Zaleski for service upon him. Because of this failure of service, a second suit, the action before us, was commenced by service of the writ, summons and complaint upon each defendant on October 2, 1985. Upon motion of the defendant, these two cases were consolidated for trial. Subsequently, the two actions were withdrawn as to the defendant Dorothy Zaleski. Later, the earlier case was withdrawn in its entirety, leaving only the second suit against the defendant for trial and judgment.

The defendant alleged by way of special defense that the cause of action did not accrue within six years before the commencement of suit, contrary to the statute of limitations, General Statutes § 52-576. By stipulation, the evidence at trial consisted of the exhibits introduced by the parties.

The plaintiff's claim at trial was that the statute of limitations began to run on October 27, 1981, when judgment was rendered against it in the suit brought by Green Enterprises, Inc., on its labor and material payment bond. The defendant, on the other hand, alleged by special defense that the statute began to run on September 21, 1979, the date of the defendant's breach of his contract with the town of Chester and his concomitant default thereby of the general indemnity agreement, which gave the plaintiff the immediate right to bring suit against the defendant.

The trial court rendered judgment for the plaintiff, finding that none of the plaintiff's losses was barred

by the statute of limitations before the commencement of this action on October 2, 1985. The holding of the court was narrow and succinct. Without reviewing the specific terms of the general indemnity agreement, the court's complete legal reasoning was simply stated: (1) where an agreement indemnifies against liability, the cause of action arises as soon as liability is incurred; and (2) where it indemnifies against loss, the cause of action does not accrue until a loss has occurred. That court cited *Fairfield* v. *D'Addario,* 149 Conn. 358, 361, 179 A.2d 826 (1962), and *Calamita* v. *DePonte,* 122 Conn. 20, 23, 187 A. 129 (1936). On that basis, the court concluded: "Obviously, as to the plaintiff's indemnity of the defendant's performance with the town of Chester, liability was incurred as soon as the defendant defaulted; *Fairfield* v. *D'Addario,* supra, 361; but as to the defendant's indemnity of the plaintiff's loss, liability occurred only when the plaintiff had such a loss. *Calamita* v. *DePonte,* supra, 24–25." In reaching that conclusion, the court erred by failing to consider the terms and provisions of the general indemnity agreement upon which suit had been brought.

The sole issue presented in this appeal is framed by General Statutes § 52-576 (a). As relevant here, the statute provides that "[n]o action . . . on any contract in writing, shall be brought but within six years after the right of action *accrues* . . . . " (Emphasis added.) In our jurisdiction, an action is commenced on the date of service upon the defendant. *Valley Cable Vision, Inc.* v. *Public Utilities Commission,* 175 Conn. 30, 33, 392 A.2d 485 (1978); *Broderick* v. *Jackman,* 167 Conn. 96, 99, 355 A.2d 234 (1974). The plaintiff's suit against the defendant, therefore, commenced on October 2, 1985. The determinative question before us, consequently, is whether the plaintiff's cause of action under the general indemnity agreement "accrued" before or after October 2, 1979. " 'Applied to a cause

of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand.' *Eising* v. *Andrews,* 66 Conn. 58, 64, 33 A. 585 (1895)." *D'Occhio* v. *Connecticut Real Estate Commission,* 189 Conn. 162, 182, 455 A.2d 833 (1983).

The trial court correctly found that "[o]bviously, as to the plaintiff's indemnity of the defendant's performance with the town of Chester, liability was incurred as soon as the defendant defaulted." It erred, however, when it concluded thereafter that "as to the defendant's indemnity of the plaintiff's loss, liability occurred only when the plaintiff had such a loss." These contradictory holdings were predicated upon the same general indemnity agreement. In substance, the trial court found that the defendant's agreement was an indemnification for both liability and loss, but since the plaintiff sought recovery for loss, and not for liability, the particular action accrued when the loss occurred. The trial court incorrectly subdivided the general indemnity agreement this way.

There could be but one statute of limitations applicable to any cause of action under the defendant's indemnification agreement, and we find that the plaintiff's right of action against the defendant thereunder accrued as soon as it incurred liability due to the defendant's default on the roof replacement contract. This default occurred on September 21, 1979, giving the plaintiff an immediate right to bring suit against the defendant. Our conclusion is based upon our review of the law and examination of the general indemnity agreement before us.

Generally, indemnity agreements fall broadly into two classes, those where the contract is to indemnify against liability and those where it is to indemnify against loss. In the first, the cause of action arises as

soon as liability is incurred, but in the second it does not arise until the indemnitee has actually incurred the loss. *Fairfield* v. *D'Addario,* supra, 361; *Calamita* v. *DePonte,* supra, 23. Where an indemnity agreement, however, indemnifies against liability as well as against loss, the case here, the indemnitee does not have to wait until the loss occurs, but may sue on the agreement as soon as liability is incurred. 41 Am. Jur. 2d, Indemnity § 29.

"The intention of the parties to a contract is to be determined by a fair and reasonable construction of the language used interpreted in light of the situation of the parties, the circumstances connected with the transaction, the motives of the parties and the purposes which they sought to accomplish. *E & F Construction Co.* v. *Rissil Construction Associates, Inc.,* 181 Conn. 317, 320, 435 A.2d 343 (1980); *Marcus* v. *Marcus,* 175 Conn. 138, 141, 394 A.2d 727 (1978)." *John F. Epina Realty, Inc.* v. *Space Realty, Inc.,* 194 Conn. 71, 77–78, 480 A.2d 499 (1984).

By the second paragraph of his indemnity agreement, the defendant undertook "to indemnify and save harmless the Surety from and against any and all demands, *liabilities, loss,* costs, damages or expenses . . . *whether the Surety shall have paid out any such sums or any part thereof or not* . . . . " (Emphasis added.) The fourth paragraph of the agreement provides that "[i]n the event of Default, as defined above, Surety may at its option and sole discretion: ⋅ . . E. File an immediate suit to enforce the provisions of this Agreement." The third paragraph defines default as follows: "Principal shall be in Default with respect to a Contract, and hereunder if any of the following occur: A. Principal breaches, abandons or repudiates any Contract. B. Any Obligee declares Principal to be in Default. C. Principal fails to pay for any labor or materials when such payment is due. . . ."

These clear and unambiguous terms of the defendant's general indemnity agreement indicate that the parties themselves expressly agreed and intended that the plaintiff was to have an immediate right to commence suit on the agreement in the event (1) that the defendant breached or abandoned his contract with the town of Chester, (2) that the town declared the defendant to be in default, or (3) that the defendant failed to pay for any labor or materials when payment was due, notwithstanding that no loss had yet been determined, suffered or paid by the plaintiff on its performance or labor and material payment bonds. The plaintiff's cause of action accrued to it by having such a contractual right of immediate suit on the agreement upon default by the defendant. This occurred on September 21, 1979. The statute of limitations, therefore, commenced to run on that date.

In *Dickson* v. *United States Fidelity & Guaranty Co.*, 150 Miss. 864, 876–77, 117 So. 245 (1928), the indemnitee sued the indemnitor on the latter's bond in which he agreed and bound himself to " 'at all times save harmless and keep indemnified the United States Fidelity & Guaranty Company . . . against all suits, actions, debts, damages, costs, charges, and expenses, including court costs and counsel fees . . . by reason of the suretyship of the United States Fidelity and Guaranty Company.' " Unlike the indemnity agreement before us, the bond in *Dickson* did not by its terms expressly undertake to indemnify specifically for "liabilities." Also, the bond before that court did not give the indemnitee the right of immediate suit in the event of default.

Notwithstanding that the bond in *Dickson* was not as clear and specific in setting forth the indemnitee's rights on default as the agreement before us, the issue in that case was similar to that under consideration by us, and the decision of the Mississippi Supreme Court

supports our conclusion on the stronger factual basis here. That court held as follows: "One question is whether the bond sued on indemnified appellee, the indemnitee therein, against loss alone, or both liability and loss, as surety on the contractor's bond. We think it plain from the language of the bond, above quoted, that the bond was one indemnifying appellee against liability as well as loss, and therefore appellee did not have to wait until loss occurred before it had a right of action on the bond. Appellee's right of action arose at once upon its becoming liable as surety on the contractor's bond." Id., 877. The agreement in the case before us not only expressly indemnified the plaintiff against liability and loss, but also provided for indemnification "whether the Surety shall have paid out any such sums or any part thereof."

Our conclusion is also supported by the holding of our Supreme Court in *Bridgeport* v. *Aetna Indemnity Co.*, 91 Conn. 197, 99 A. 566 (1916), that the liability of an indemnity company accrued at the time the principal breached its contract underlying the bond, and the obligee's cause of action for recovery of damages arose upon such breach notwithstanding that the amount of damages had not yet been determined. Id., 204. The court's specific holding, applicable to the case before us, was as follows: "A cause of action in favor of the city thereupon arose for the recovery of the damages consequent upon such breach. It might have brought suit immediately, or waited such length of time as the statute of limitations permitted, but only one action could be brought, and in that action, whenever brought, full recovery, covering the future as well as the past, could be had." Id.

The immediate right to bring suit against the defendant accrued to the plaintiff upon the defendant's default of its roof replacement contract with the town of Chester. Under the provisions of paragraph 4E of the

general indemnity agreement, and under the rule of law concerning a contract which indemnifies against liability as well as loss, the plaintiff's cause of action accrued upon the defendant's default in the underlying performance and labor and material payment bonds. This is so notwithstanding the fact that the plaintiff had not yet suffered a determined or fixed loss.

We hold that the plaintiff's cause of action accrued on September 21, 1979, when the defendant first defaulted on the underlying bonds covered by his general indemnity agreement. Since the plaintiff's suit did not commence until the defendant was served by mesne process on October 2, 1985, this action is barred by the six year statute of limitations provided in General Statutes § 52-576.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.